# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Alejandro Espinoza, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 12-1950 (CKK) |
| | : | |
| Department of Justice *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

In this action brought *pro se*, plaintiff claims that the Executive Office for United States Attorneys ("EOUSA") violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by withholding responsive records and denying his requests for expedited processing and a fee waiver. Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff has failed to exhaust his administrative remedies or for summary judgment under Rule 56. Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. [Dkt. # 12].[1] Plaintiff has opposed the motion [Dkt. # 22] and cross moved for summary judgment, Pl.'s Cross-Mot. for Summ. J. [Dkt. # 23], and defendants have replied, Defs.' Reply in Support of Mot. to Dismiss, or, in the Alternative, for Summ. J. and Opp'n to Pl.'s Cross-Motion for Summ. J. [Dkt. # 27-1]. Upon consideration of the parties' submissions and the entire record, the Court will grant defendants' motion, deny plaintiff's motion, and enter judgment accordingly.

---

[1]  In response to plaintiff's Amended Complaint [Dkt. # 18] lodged after their initial dispositive motion, defendants filed a supplemental brief renewing their arguments set out in the initial brief and addressing plaintiff's additional claims raised in the Amended Complaint. Suppl. Mem. of P. & A. in Support of Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. # 20-1].

# BACKGROUND

Plaintiff was convicted in 2005 of drug charges following a trial held in the United States District Court for the District of New Mexico. *See U.S v. Espinoza*, --- Fed. Appx. ---, 2013 WL 6183847 (10th Cir. Nov. 27, 2013) (denying request for certificate of appealability). On June 19, 2012, plaintiff requested from EOUSA all records "related to the U.S. Attorney's discovery that evidence was withheld from me during my trial," including "emails and other electronically stored information." Am. Compl. [Dkt. # 18] ¶ 11; Defs' Ex. 1 [Dkt. # 12-5] ("Request"). In addition, plaintiff "requested Debra James's Pre-Sentence Report (PSR) generated for Case Number 04-cr-479. Specifically, the date the PSR was generated, and any information concerning Debra James's positive drug tests within the PSR," and he sought a fee waiver "because the production of the requested information could serve the substantial public interest in setting free an innocent man." Request at 2. Plaintiff stated: "[i]f your office cannot waive the duplication and search fees[,] please forward any responsive records to which I'm entitled free of charge, and let me know what the fees are relating to the rest of the responsive record[s]." *Id*. at 3. On September 3, 2012, plaintiff "lodge[d] a complaint [with EOUSA] concerning the delay of the processing of my requests, and to clarify that I sought expedited processing of my requests," while acknowledging that he had "inadvertently failed to specify that I was seeking expedited processing" in the FOIA request. Defs.' Ex. 2 [Dkt. 12-6].

Meanwhile, by letter dated July 11, 2012 -- which plaintiff in the September 3 letter acknowledged receiving -- EOUSA informed plaintiff that the request for his records was designated Request No. 12-2643 (Self), that the request for Debra James's records was designated Request No. 12-2644 (Third Party), and that each request would be processed separately and a "response on each" request would be sent "as soon as [processing] is finished."

Decl. of Kathleen Brandon, Ex. A [Dkt. # 12-3]. The letter also informed plaintiff that "EOUSA makes every effort to process most requests within a month (20 working days)" but that "a very large request," *e.g.*, one seeking "all information about myself in criminal case files," is treated as a "Project Request" that "usually take[s] approximately nine months to process." *Id.* Finally, plaintiff was told that pursuant to 28 C.F.R. § 16.3(c), by making a FOIA request, he had "agreed to pay fees up to $25, . . . unless you have requested a fee waiver"; that absent a fee waiver, he would be assessed search and duplication fees after the first two hours of the search and the first 100 pages; that the agency "will normally notify you of our estimate of fees" exceeding $25; that "[a]fter we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request," his payment of any assessed fees would be required before the release of any responsive records; and that "[w]ithout such payment, your request file will be closed without further action." *Id.*

Request No. 12-2644 (third-party records)

By letter dated July 31, 2012, EOUSA denied plaintiff's request for James's records due to his failure to provide James's "express authorization and consent" to release such records, proof of her death, or "a clear demonstration" of an overriding public interest in disclosing such records. *Id.*, Ex. B. The letter informed plaintiff that third-party information is "generally exempt from disclosure" under FOIA exemptions 6 and 7(C), *see* 5 U.S.C. § 552(b), and that he had the right to appeal the decision to the Office of Information Policy ("OIP") in 60 days. EOUSA has no record or notice from OIP that plaintiff appealed this decision. Brandon Decl. ¶ 9.

<u>Request No. 12-2643 (first-party records)</u>

In August 2012, at EOUSA's direction, the United States Attorney's Office for the District of New Mexico searched for records responsive to plaintiff's request for his records but stopped the search after reaching the two-hour limit. *Id*. ¶¶ 10-11; Decl. of Diane Tapia [Dkt. # 12-4] ¶¶ 3-12. On August 16, 2012, Tapia informed EOUSA that the local office had "exceeded the two hours of free search and had stopped the search process," but had "found nothing responsive to the request except for the James [PSR]." Tapia Decl. ¶ 12. The search did not include "archived electronic records from January 1, 2006 through August 31, 2008, because those records were archived at EOUSA[,] [which] would have to assist with that part of the search." *Id*. Tapia sought "further instructions [on] how [the local office] should proceed." *Id*. ¶ 13.

EOUSA responded in October and November 2012, instructing the local office not to include James's PSR in its response since it was protected by the Privacy Act, and "to have the [local] information technology staff contact Diane Heintzelman of EOUSA to coordinate and determine the appropriate fee to charge for searching the archived electronic records." *Id*. ¶ 15. On December 14, 2012, Tapia received an email from Heintzelman stating that the local "office emails were migrated to USAMAIL" in May 2008 and estimating that it would take four hours of search time at $84.41 per hour for a total of $325.64 to search the archived records. *Id*. ¶ 16. On that same day, Ed Lee of the local office's technology staff informed Tapia that "he did not run the electronic search" but that he had "spent approximately two hours preparing the parameters for the search and locating the records to be searched." *Id*. Tapia received no further instructions from EOUSA prior to the commencement of this action. *See id*. ¶ 17.

Meanwhile, plaintiff filed this civil action on December 4, 2012, "having received no further communication regarding his request . . . ." Pl.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 23] ¶ 18. By letter of January 2, 2013, EOUSA informed plaintiff that "[w]e are currently searching for documents responsive to your FOIA/PA request, and we have reached the two hours free search time provided to you at no charge." Brandon Decl., Ex. D. The letter stated that DOJ regulation 16.11(i) "provide that our office may collect an advance payment before we continue processing your request if we estimate fees will exceed $250.00"; that an additional four hours had been estimated to complete the search of the requested "archived email records"; that the hourly fee for searching the archived email records was $81.41; and that plaintiff's payment of $325.64 was required to continue the processing of his request. Brandon Decl., Ex. D.

Plaintiff was further informed that the number of responsive records was not known "prior to a complete search" but that he could reduce his costs by limiting the scope of his request, specifying the maximum amount he was willing to pay, or terminating the search at the two hours' free time. The letter further stated that pursuant to 28 C.F.R. § 16.11(i), plaintiff's request was not "considered received" until EOUSA received his response and that his failure to act within 30 days would result in the closing of his request. *Id.* A form was included for plaintiff to "indicate [his] wishes." *Id.* The letter also contained a note informing plaintiff about his right to appeal to OIP within 60 days while acknowledging that "this FOIA request is currently the subject of litigation." *Id.*

By letter dated February 21, 2013, EOUSA informed plaintiff that his request was closed due to his failure to respond to the January 2, 2013 letter and, since "[t]his is the final action," he

could appeal to OIP within 60 days.  *Id.*, Ex. E.  Again, EOUSA has no record or notice from

OIP that plaintiff appealed this decision.  Brandon Decl. ¶ 17.

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party" on an element of the claim.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly

submitted request except those protected from disclosure by one or more of nine enumerated

exemptions.  *See* 5 U.S.C. § 552(b).  The agency's disclosure obligations are triggered by its

receipt of a request that "reasonably describes [the requested] records" and "is made in

accordance with published rules stating the time, place, fees (if any), and procedures to be

followed."  5 U.S.C. § 552(a)(3)(A).  The FOIA authorizes the court only "to enjoin [a federal]

agency from withholding agency records or to order the production of any agency records

improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Thus, the elements of a

FOIA claim are (1) improperly  (2) withheld (3) agency records.  "Judicial authority to devise

remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5

U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation."

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).  The

disclosure requirement generally covers only those records that are in the agency's custody and

control at the time of the FOIA request.  *McGehee v. Central Intelligence Agency*, 697 F.2d

1095, 1110 (D.C. Cir. 1983).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

Agency declarations are accorded "a presumption of good faith[.]" *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted). To rebut the presumption, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). In properly opposing a summary judgment motion, a plaintiff may not merely "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing

that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) ("In other words, 'uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.' ") (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011)) (alteration omitted).

## DISCUSSION

At the outset, plaintiff invokes both the FOIA and the Administrative Procedure Act ("APA") to obtain the same relief. *See* Am. Compl. at 5-8. But the APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. It is axiomatic that plaintiff's remedy lies with the FOIA. His APA claim therefore is dismissed. *See Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011) ("APA claims arising out of an agency's response to a FOIA request must be dismissed when they seek relief that can be obtained through a FOIA claim itself.") (citing cases).

Defendants argue that dismissal of plaintiff's FOIA claims is warranted because plaintiff failed to exhaust his administrative remedies by (1) paying the fees assessed for Request No. 12-2643 (first-party records) and (2) administratively appealing any adverse determinations prior to filing this action. *See* Defs.' Reply at 2-7. In addition, defendants argue that they are entitled to summary judgment on the adequacy of their search for plaintiff's records and on their denial of plaintiff's request for James's records pursuant to FOIA exemptions 6 and 7(C) and the Privacy Act, 5 U.S.C. § 552a. *See id*. at 8-9. Finally, defendants argue that plaintiff's claim predicated on his request for expedited processing is moot. *See id*. at 6-7.

Failure to Exhaust Request No. 12-2643 (first-party records)

1. Plaintiff's Fee Waiver Request

Under the FOIA, "[e]xhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.' " *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). In this context, the doctrine is "jurisprudential" and "not jurisdictional." *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Generally speaking, a plaintiff's "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id.* at 1258-59 (quoting *Oglesby*, 920 F. 2d at 61).

An agency's disclosure obligation is triggered by its receipt of a request that, *inter alia*, "is made in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to follow." 5 U.S.C. § 552(a)(3)(A); *see* § 552(a)(4)(A) (authorizing the setting of "reasonable standard charges" for document search and duplication); *accord Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 185, n.2 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies [including the deadlines for making a determination] apply only once an agency has received a proper FOIA request.") (quoting § 552(a)(3)(A)). Thus, a requester's failure to pay assessed fees also constitutes a failure to exhaust. *See Oglesby*, 920 F.2d at 66 ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees.").

Plaintiff does not dispute that he failed to pay the assessed fees. Rather, he argues that dismissal for his failure to exhaust is unwarranted because he constructively exhausted his administrative remedies when defendants failed to respond to his fee waiver request within the

FOIA's 20-day timeline.  *See* Pl.'s Opp'n at 4-7.  Plaintiff's constructive exhaustion argument is based on the following provision:

> Any person making *a request to any agency for records* under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies *with respect to such request* if the agency fails to comply with the applicable time limit provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C)(i) (emphases added).  But this language does not specifically address a request for a fee waiver and, for reasons discussed below, the Court does not find it applicable to such a request.

The problem for defendants, though, is that EOUSA has never rendered a final decision on plaintiff's fee waiver request to trigger the exhaustion requirement.  *See Oglesby*, 920 F.2d at 67 (finding agency's failure to "provide notice of [requester's] right to appeal" adverse decision to the head of the agency "insufficient under the FOIA to trigger the exhaustion requirement").  Defendants state that they "notified Plaintiff of the fee waiver denial [and] provided adequate justification for the denial," Defs.' Reply at 3, but they cite only to the January 2, 2013 fee letter, which does not specifically address plaintiff's request for a fee waiver.  Defendants contend that "[b]y conveying the estimated charges for performing a search, the request for a fee waiver was denied, and the reason for the denial was plainly visible through the explicit mention of the governing statute, 28 C.F.R. § 16.11(i)."  *Id*. at 4.

Defendant's implicit denial rationale flies in the face of FOIA's particularized fee provisions and DOJ's implementing regulations and, if accepted, would improperly render those provisions meaningless.  *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (It is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (citation and internal quotation marks omitted); *id*. (quoting *United States v. Menasche*, 348 U.S.

528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute. ").  The following aspects of the law and regulations inform the Court's decision.

First, the FOIA requires each agency to "promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced."  5 U.S.C. § 552(4) (A)(i).

Second, fee waiver requests made to DOJ are governed by a detailed scheme set out at 28 C.F.R. § 16.11(k) to guide a component in reaching a decision consistent with the FOIA by determining whether "[d]isclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and whether "[d]isclosure . . . is not primarily in the commercial interest of the requester."  28 C.F.R. § 16.11(k)(1)(i)(ii).

Third, DOJ regulations single out "a determination on any disputed fee matter, including a denial of a request for a fee waiver" as one of several "adverse determinations, or denials of a request" that require a "denial letter" containing "(2) [a] brief statement of the reason(s) for the denial . . . and (4) [a] statement that the denial may be appealed under § 16.9(a) and a description of the requirements of § 16.9(a)."  28 C.F.R. § 16.6(c).

Fourth, in reviewing an agency's decision, the Court must consider both the FOIA statute as well as the agency's assessment in accordance with its regulations to decide whether the agency improperly denied a fee waiver request.  *See PEER v. U.S. Dep't of Commerce*, No. 12-1293, --- F. Supp. 2d ---, 2013 WL 4830966, at *7 (D.D.C. Sept. 11, 2013) (citing *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003)).  The Court, however, is not

bound by the agency's guidelines, and it "owes no particular deference" to the agency's interpretation of the FOIA's fee-waiver provision. *Id*. (quoting *Judicial Watch, Inc*.)

Since this record is devoid of an administrative review of and final decision on plaintiff's clearly articulated fee waiver request, the Court finds that the exhaustion requirement was not triggered. Hence, defendants' motion to dismiss the fee waiver claim based on plaintiff's failure to exhaust is denied.

2. Plaintiff's Entitlement to a Fee Waiver

The FOIA permits the court to "determine the [fee waiver issue] de novo: *Provided*, That [its] review of the matter [is] limited to the record before the agency." 5 U.S.C. § 552(a) (4)(A)(vii). Since plaintiff's FOIA request includes his reasons for seeking a fee waiver, the Court has sufficient information to resolve this issue without delaying the inevitable denial.

In general, " 'a FOIA requester must pay reasonable costs for the search, review, and duplication of the records sought.' " *Schoenman v. FBI*, 604 F. Supp. 2d 174, 188 (D.D.C. 2009) (quoting *Judicial Watch, Inc. v. Dep't of Transp*., Civ. No. 02–566, 2005 WL 1606915, at *3 (D.D.C. July 7, 2005)). But an agency must waive or reduce such fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The FOIA requester bears the initial burden of proving that the foregoing requirements exist. *Schoenman*, 604 F. Supp. 2d at 188. "According to legislative history, the FOIA fee waiver provision " 'is to be liberally construed in favor of waivers for noncommercial requesters.' " *Id*. (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987), quoting 132 Cong. Rec. 27, 90 (1986) (Sen. Leahy)). However, "[c]onclusory statements that the disclosure

12

of the requested documents will serve the public interest are not sufficient" to support a fee

waiver. *Judicial Watch, Inc. v. Dep't of Justice*, 185 F.Supp.2d 54, 60 (D.D.C. 2002).

It is reasonably safe to conclude that plaintiff has not requested the records for a

commercial interest. Hence, the only question is whether he has demonstrated the requisite

public interest in disclosing the requested information.

Plaintiff states that "a fee waiver is warranted[] because the production of the requested

information could serve the substantial public interest in setting free an innocent man." Request

at 3. He states that "the federal government obtained a conviction through the corruption of

truth-seeking function of the trial process," apparently through "a confirmed perjurious

informant," and that the public has an interest in knowing this. *Id*. Plaintiff has not proffered

anything to substantiate these assertions, the merits of which have already been rejected by the

U.S. Court of Appeals for the Tenth Circuit and the U.S. District Court for the District of New

Mexico in plaintiff's unsuccessful habeas corpus proceedings. *See Espinoza*, 2013 WL 6183847,

at *3 (determining that suppressed impeachment evidence about James's drug use would not

have changed the outcome of plaintiff's trial since "the government's case against [plaintiff]

would have been compelling even if the [evidence] had been available to the defense").

Furthermore, court "decisions clearly tie fee waivers to public benefit . . . and establish that

where the requester seeks information concerning himself only," the denial of a fee waiver

request "will be upheld . . . ." *Ely v. Postal Service*, 753 F.2d 163, 165 (D.C. Cir. 1985)

(citations and internal quotation marks omitted); *see accord Ortloff v. Dep't of Justice*, No. 02-

5170, WL 31777630 (D.C. Cir. Dec. 11, 2002) (per curiam) ("Insofar as appellant seeks

information to facilitate a challenge to his conviction, the court considers disclosure less likely to

contribute to public understanding.") (citations omitted); *Monroe-Bey v. FBI*, 890 F. Supp. 2d

92, 98 (D.D.C. 2012) (requester's "need for the records to prove his innocence--a theme throughout his fee waiver request—works against a fee waiver") (quoting *Ortloff*); *Banks v. Dep't of Justice*, 605 F. Supp. 2d 131, 139 (D.D.C. 2009) ("A requester's private interest is not relevant to the fee waiver analysis, and an attack on a criminal conviction is a private interest."); *Brunsilius v. U.S. Dep't of Energy*, 514 F. Supp. 2d 30, 35 (D.D.C. 2007) ("a private litigation interest is not relevant to the fee waiver analysis"); *Harrington v. Dep't of Justice*, No. 06-0254, 2007 WL 625853, at *2 (D.D.C. Feb. 27, 2007) ("At most, granting a fee waiver and disclosing [requested criminal case] records advances nothing other than plaintiff's own understanding of his criminal case.").

Besides, plaintiff does not state his "ability and intention" to disseminate the requested information to the public, which "alone [provides] a sufficient basis for denying the fee waiver request." *Larson v. Central Intelligence Agency*, 843 F.2d 1481, 1483 (D.C. Cir. 1988); *see Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006) ("In assessing whether a public interest fee waiver request should be granted, the Court must consider the requester's ability and intention to effectively convey or disseminate the requested information to the public.") (citation and internal quotation marks omitted).  The Court therefore finds that plaintiff has not shown that he is entitled to a fee waiver.

3.  Defendants' Entitlement to Fees

Since EOUSA failed to act on plaintiff's fee waiver request, the Court will now decide if EOUSA is foreclosed from assessing fees in light of the following FOIA provision:

> An agency shall not assess search fees (or in the case of a requester described under clause (ii)(II), duplication fees) under this subparagraph if the agency fails to comply with any time limit under paragraph (6), if no unusual or exceptional circumstances (as those terms are defined for purposes of paragraphs (6)(B) and (C), respectively) apply to the processing of the request.

5 U.S.C. § 552(a)(4)(A)(viii). Since the Court has found paragraph 6 inapplicable to a fee

waiver request, *supra* at 10, it finds no hindrance to EOUSA's ability to assess search fees. And,

having found that plaintiff is not entitled to a fee waiver, the Court determines that he must pay

the reasonably assessed search fees (and any subsequently imposed duplication fees) before

obtaining judicial review of EOUSA's treatment of his request for first-party records. *See*

*Rosenberg v. U.S. Dep't of Immig. and Customs Enforcement*, 954 F. Supp. 2d 1, 10 (D.D.C.

2013) ("The fact that a fee request was made after the [p]laintiff commenced litigation does not

excuse the [p]laintiff from paying the requested fees.") (citing *Pollack v. Dep't of Justice*, 49

F.3d 115, 120 (4th Cir.1995), *cert denied*, 516 U.S. 843 (1995)) (other citations omitted).

In the January 2, 2013 fee assessment letter, EOUSA informed plaintiff that his request

would be closed if he failed to pay the fees and that he could appeal the decision to OIP. *See*

Brandon Decl., Ex. D. Hence, the Court concludes that EOUSA acted properly under the

applicable DOJ regulation, 28 C.F.R. § 16.11(i), when it closed FOIA No. 12-2643 nearly 45

days later despite the current litigation.[2] Since under DOJ regulations, the request is "not . . .

considered received" until the requester agrees to pay assessed fees, EOUSA is under no

statutory obligation to produce responsive records; therefore, no improper withholding has yet

occurred.

---

[2] The regulation states in relevant part:

> (4) In cases in which a component requires advance payment or payment
> due under paragraph (i)(2) or (3) of this section, the request shall not be
> considered received and further work will not be done on it until the
> required payment is received.

28 C.F.R. § 16.3(i)

The Court finds no genuinely disputed material fact with regard to EOUSA's closing of Request No. 12-2643 and concludes that defendants are entitled to judgment as a matter of law on its treatment of this request.

Request No. 12-2644 for Third-Party Records

Plaintiff alleges that he did not receive EOUSA's July 31, 2012 letter denying his request for James's records and, thus, he could not have timely exhausted his administrative remedies as to that decision. Pl.'s Opp'n at 6-7. Plaintiff also argues that defendants improperly applied FOIA exemptions 6 and 7(C) and the Privacy Act to his request for James's records. *Id*. at 11-14.

Since the failure to exhaust is not a jurisdictional barrier, and the parties have briefed the substantive questions, the Court will address EOUSA's asserted exemptions. Before proceeding, however, the Court finds that any claim arising under the Privacy Act is moot because the Privacy Act specifically exempts from its nondisclosure provisions documents that are otherwise required to be disclosed under the FOIA, which is the focus of this litigation. 5 U.S.C. § 552a(b)(2); *see Greentree v. United States Customs Serv*., 674 F.2d 74, 79 (D.C. Cir. 1982) (concluding "that section (b)(2) of the Privacy Act represents a Congressional mandate that the Privacy Act not be used as a barrier to FOIA access").

1. The Claimed Exemptions

In enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). Under FOIA's personal privacy exemptions 6 and 7(C), relied upon here, records pertaining to third-party individuals typically are exempt from disclosure absent the subject's written authorization or a showing that

an overriding public interest exists to compel disclosure. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Plaintiff does not dispute that some of the information contained in James's PSR is law enforcement material, and he states that he is not interested in James's personal information or the fact that she was the subject of an investigation. Pl.'s Opp'n at 13. Plaintiff "does dispute whether the date the government generated that PSR . . . was compiled for such purposes in mind." *Id*. He states that he is "interested in whether the government had indeed generated James's PSR at the time that Plaintiff sought its disclosure." *Id*.

Plaintiff's dispute is based on the faulty premise that the FOIA obligates the government to answer questions apparently about any governmental action. The FOIA is not so sweeping but rather provides individuals "access to [agency] records 'written or transcribed to perpetuate knowledge or events.' " *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 803 (1987) (citations omitted); *see Kissinger*, 445 U.S. at 151-52 ("FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control.") (citations omitted). The FOIA places no obligation on an agency "to answer questions disguised as a FOIA request . . . or to create documents or opinions in response to an individual's request for information," *Hudgins*, 620 F. Supp. at 21, nor is an agency obligated "to obtain a duplicate of or to re-create a record [not in its control or possession] in order to fulfill a FOIA request." *James v. U.S. Secret Serv.*, 811 F. Supp. 2d 351, 358 (D.D.C. 2011), *aff'd*, No. 11–5299, 2012 WL 1935828 (D.C. Cir. May 11,

17

2012) (per curiam). Furthermore, the Court takes judicial notice of the fact that the U.S.

Probation Office is responsible for generating presentence reports, and that office, as an arm of

the court, is not subject to FOIA's disclosure requirements. *See Ruiz v. U.S Dep't of Justice*, 636

F. Supp. 2d 85, 89, n.4 (D.D.C. 2009) (citing 5 U.S.C. § 551); *Maydak v. U.S. Dep't of Justice*,

254 F. Supp. 2d 23, 40 (D.D.C. 2003). Hence, to the extent that plaintiff faults EOUSA for

failing to address "whether the government had memorialized James's drug usage in her PSR

when Plaintiff's trial attorney sought its disclosure," Pl.'s Opp'n at 13, this question is wholly

irrelevant to the FOIA analysis.

As for the claimed exemptions, it cannot be seriously disputed that the requested

information was compiled for law enforcement purposes. *See Blackwell v. FBI*, 646 F.3d 37, 40

(D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester]

explicitly sought records related to his own criminal prosecution"). Hence, the Court will

discuss exemption 7(C) but finds that defendants properly invoked exemption 6 to withhold

James's PSR since it is a document that is retrievable by her name.[3] *See U.S. Dep't of State v.*

*Wash. Post Co.*, 456 U.S. 595, 602 (1982) (threshold requirement of exemption 6 is that the

requested information "applies to a particular individual").

In assessing an agency's claim under exemption 7(C), the district court must look to the

balance of the privacy interests asserted and the public interest in disclosure. *Voinche v. FBI*,

412 F. Supp. 2d 60, 68 (D.D.C. 2006). As a general matter, the identification of an individual

"in a law enforcement file will engender comment and speculation and carries a stigmatizing

---

[3]  Although exemption 7(C) is somewhat broader than exemption 6, s*ee Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004), the "the privacy inquiry of exemptions 6 and 7(C) [is] essentially the same." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

connotation," *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names . . . of third parties," as such information is not probative of an agency's performance of its statutory responsibilities. *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). The Court of Appeals for the D.C. Circuit has more recently elaborated that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored. That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution.

*Blackwell*, 646 F.3d at 41 (citations and internal quotation marks omitted). Hence, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome [e]xemption 7(C)'s protection for personal privacy under the test outlined [*Favish*]." *Id*. (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)).

### 2. Plaintiff's Public Interest Justification

Under the *Favish* test, plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75.

Plaintiff argues that James's record "is necessary to confirm whether USAO/NM engaged in the corruption of the truth-seeking function of the trial process and actively concealed its misconduct." Pl.'s Opp'n at 11. As already determined, this argument is unsubstantiated and belied by prior court decisions. Furthermore, plaintiff's personal stake in obtaining documents in order to attack his conviction simply "does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *judgment reinstated*, 378 F.3d 1115 (D.C. Cir. 2004); *see Pugh v. FBI*, 793 F. Supp. 2d 226, 233 (D.D.C. 2011) ("That the FBI's denial of [plaintiff's] FOIA requests may hinder his efforts to challenge his conviction or sentence . . . is irrelevant."). "[C]ourts must insist on a meaningful evidentiary showing," *Favish*, 541 U.S. at 175, to even consider the competing interests. Plaintiff's conclusory allegations surrounding his prosecution, "has not come close to meeting the demanding *Favish* standard for challenging [EOUSA's] invocation of FOIA [e]xemption 7(C)." *Blackwell*, 646 F.3d at 41. Hence, the Court finds that defendants are entitled to judgment as a matter of law on their invocation of both exemptions 6 and 7(C) to deny plaintiff's request for James's records.

Expedited Processing

EOUSA rendered a final decision on plaintiff's request for James's records before plaintiff had even requested expedited processing, and "[a] district court . . . shall not have jurisdiction to review an agency denial of expedited processing . . . after the agency has provided a complete response to the request." 5 U.S.C. 552(a)(6)(E)(iv). In addition, the delay in processing plaintiff's records is attributable to the outstanding fee dispute. Hence, the Court agrees that this claim is moot.

**CONCLUSION**

For the foregoing reasons, the Court finds no genuinely disputed material fact with regard to defendants' satisfaction of their disclosure obligations under the FOIA and concludes that they are entitled to judgment as a matter of law. Consequently, plaintiff's cross-motion for summary judgment is denied. A separate Order accompanies this Memorandum Opinion.


_____s/s_____
COLLEEN KOLLAR-KOTELLY
DATE:  February 27, 2014                    United States District Judge